UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GRASSI, *et al.*, | ) | CASE NO. 1:24-cv-01096 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN GRASSI, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiffs' motion to remand. (Doc. 7.) Defendants Brett Lockwood ("Lockwood") and Smith, Gambrell & Russel LLP ("SGR") filed an opposition (Doc. 19) to which Defendants Brook-Anco Corporation ("BAC") and Brian Wright ("Wright") joined (Doc. 20). Plaintiffs replied (Doc. 24), and after a sur-reply was allowed by this Court, Defendants Lockwood and SAG filed a sur-reply (Doc. 27). For the reasons explained below, the motion to remand is GRANTED.

I. **Background**

A. **Factual Allegations**

Plaintiff Michael Grassi ("Michael") is an engineer and inventor who owns and operates CFOM, Inc. ("CFOM," together with Michael, "Plaintiffs"). (Doc. 1-1 at ¶ 17.) Defendant John Grassi ("John"), Michael's brother, owns a company called Alotech Limited, LLC ("Alotech"). (*Id.* at ¶ 18.) In the early 2000s, John approached Michael about a potential joint venture to develop a manufacturing method for casting aluminum parts. (*Id.*) Michael agreed and the two combined efforts to create a new ablation casting technology. (*Id.* at ¶ 19.) Michael and John

orally agreed to evenly split the ablation casting business.  (*Id.*)  In 2012, John asked Michael to revise their oral agreement regarding the joint venture.  (*Id.* at ¶ 20.)  Michael agreed and John and Alotech moved forward with a 65 percent stake in the joint venture, while Michael retained a 35 percent interest.  (*Id.*)  In 2013, Michael and John engaged in contract negotiations with American Honda Motor Co.  (*Id.* at ¶ 21.)  These negotiations prompted Michael and John to reduce their oral agreement to writing.  (*Id.*)

Lockwood, and attorney with SGR represented John in the negotiations with Michael and CFOM.  (*Id.* at ¶22.)  The parties exchanged drafts of an agreement in 2012 and 2013, but a written deal was allegedly never finalized.  (*Id.* at ¶ 27.)  Alotech closed the deal with Honda in 2013.  (*Id.* at ¶ 28.)  Between 2012 and 2017, Michael and CFOM continued to work with John and Alotech on the joint venture.  (*Id.* at ¶ 32.)  In July 2017, Michael disputed whether John was abiding by the oral 65/35 split for the joint venture.  (*Id.* at ¶ 33.)  Michael and CFOM stopped working with the joint venture at that time.  (*Id.*)

In October 2018, Michael and CFOM sued John and Alotech in the Cuyahoga County Court of Common Pleas, alleging breach of contract, promissory estoppel, quantum meruit, unjust enrichment, fraud, and misappropriation of trade secrets.  (*Id.* at ¶ 34.)  John and Alotech removed the case to federal court in this District.  (*Id.*)  After removal, John and Alotech filed an answer and counterclaim.  (*Id.*)  The counterclaims included claims for business defamation, tortious interference with business, declaratory judgment as to the ownership of the intellectual property and ownership of Alotech and its profits, deceptive trade practices, conversion, and breach of contract.  (*Id.*)  Attorney John Moye ("Moye") from Barnes & Thornburg LLP ("Barnes & Thornburg") acted as lead counsel for John and Alotech in that litigation.  (*Id.* at ¶ 35.)

One issue in that case involved a contract Michael allegedly signed during negotiations to memorialize the terms of the joint venture in writing.  (*Id.* at ¶ 36.)  John and Alotech claimed Michael signed an agreement that provided John and Alotech with full rights to the technology, leaving Michael with nothing (and effectively mooting his claims in the lawsuit).  (*Id.*)  Michael argued he signed no such agreement and the agreement presented was forged.  (*Id.* at ¶ 37.)

To prove Michael signed an agreement, John and Alotech, through Moye, produced an email from October 2012.  (*Id.* at ¶ 45.)  The email purportedly shows the collection of several agreements, including the one at issue.  (*Id.*)  John produced the email with heavy redactions which allegedly made it appear as if the email was sent and received in October 2012.  (*Id.* at ¶ 46.)  Lockwood submitted a declaration stating that he received the email on October 25, 2012, with nine attachments, one of which was the alleged contract.  (*Id.* at ¶ 48.)

Defendants used these documents in that federal case, in particular, at summary judgment and trial.  (*Id.*)  Relating to summary judgment, Defendants moved for judgment on Michael's and CFOM's claims and Defendants' counterclaims based primarily on the validity of the 2012 agreement.  (*Id.* at ¶¶ 36, 61.)  The district court, finding the agreement valid as a matter of law based on the agreement itself and Lockwood's declaration, granted summary judgment in favor of Defendants on Michael's and CFOM's claims for quantum meruit, unjust enrichment, and misappropriation of trade secrets.  (*Id.* at ¶ 61.)  The district court also granted summary judgment on Defendants' counterclaim for declaratory judgment regarding the ownership of the intellectual property.  (*Id.*)  The remaining claims proceeded to a jury trial.  (*Id.* at ¶ 62.)

During trial, Michael and CFOM could not present any evidence relating to the validity, or the potential forgery, of the agreement because the court decided as a matter of law the agreement was valid.  (*Id.*)  A jury returned a full defense verdict.  (*Id.*)  Plaintiffs appealed and

the Sixth Circuit reversed, finding a question of fact as to the validity of the agreement.  (*Id.* at ¶¶ 63–64.)  The case proceeded to a second trial following that order.  (*Id.* at ¶ 64.)

On the eve of the second trial, the district court required John and Alotech to produce the October 2012 email without redactions.  (*Id.* at ¶ 69.)  With the redactions removed, there was allegedly no single email from October 25, 2012, with the nine attachments.  (*Id.* at ¶¶ 53–55.) Plaintiffs allege the redactions made it appear as if all documents were circulated in 2012 when really the unredacted email reveal communications between Lockwood and Moye in 2019.  (*Id.*) The underlying email from October 2012 allegedly did not circulate any signed agreement.  (*Id.*) Plaintiffs allege Defendants did not produce an original version of the October 2012 email chain nor any document that showed the alleged agreement was circulated at that time.  (*Id.*)

After the district court ordered John and Alotech to produce an unredacted version of the document, the case settled.  (*Id.* at ¶ 71.)  The parties executed a settlement agreement.  (*Id.*)  The enforceability of the settlement agreement is being challenged before the District Judge who presided over that matter.  (*Id.* at ¶ 72.)

Prior to any litigation, in November 2014, Michael purchased a laptop.  (*Id.* at ¶ 29.)  He used the laptop for personal and professional use, including CFOM matters unrelated to Alotech. (*Id.*)  In December 2014, unbeknownst to Michael, John—along with Raymond Peltz of RSP Consulting—installed software on Michael's laptop.  (*Id.* at ¶ 30.)  The software allowed John and Peltz to remotely monitor Michael's activities on the laptop.  (*Id.*)  Michael also used the same laptop for communications with his counsel during the federal litigation.  (*Id.* at ¶ 31.) Michael discovered the installation of the software in January 2023 during litigation over the settlement agreement.  (*Id.* at ¶ 83.)  Separately, as part of the settlement agreement dispute relating to the laptop, Michael alleges Wright from BAC submitted a false declaration in January

2023.  (*Id.* at ¶ 75.)  In that declaration, Wright stated in February 2015 he installed an Alotech database on Michael's laptop.  (*Id.*)  The purpose of the declaration was to show that the laptop was Alotech property that should be returned.

### B.     Procedural History

Plaintiffs filed an eight-count complaint in the Cuyahoga County Court of Common Pleas on May 29, 2024.  (*Id.* at ¶¶ 80–142.)  The named defendants are John Grassi; Alotech Limited, LLC; Raymond Peltz; RSP Consulting; Brian Wright; Brook-Anco Corporation; Vicki Hawker; Brett Lockwood; Smith, Gambrell & Russell LLP; John Moye; Kilpatrick, Townsend & Stockton LLP; and Barnes & Thornburg LLP.  (*Id.* at 13–15.)  Plaintiffs asserted the following claims: invasion of privacy (Count One, as to Grassi, Alotech, Peltz, RSP Consulting, and Moye only); conversion (Count Two, as to Grassi, Alotech, Peltz, and RSP Consulting only); misappropriation of trade secrets (Count Three, as to Grassi, Alotech, Peltz, and RSP Consulting only); spoliation of evidence (Count Four, as to Moye and Lockwood only); abuse of process (Count Five, as to Grassi, Alotech, Moye, Lockwood, Wright, Brook-Anco, and Hawker only); civil recovery for criminal acts pursuant to R.C. §§ 2307.60, 2307.61 (Count Six, as to all Defendants); civil conspiracy (Count Seven, as to all Defendants); and civil RICO pursuant to R.C. § 2923.32 (Count Eight, as to all Defendants).  (*Id.*)  All claims arise under Ohio law.

On June 27, 2021, SGR and Lockwood timely filed a notice of removal.  (Doc. 1.)  They assert federal question jurisdiction only.  To them, the spoliation and abuse of process claims raise questions of federal law because the underlying factual allegations include actions taken in the other federal litigation.

The notice of removal indicated SGR and Lockwood obtained consent from all served defendants and sought removal pursuant to 28 U.S.C. § 1331.  (*Id.* at 1–2.)[1]  On July 1, 2024, Plaintiffs moved to remand.  (Doc. 7.)  Defendants Barnes & Thornburg, Kilpatrick, Townsend & Stockton LLP, Moye, Wright, BAC, and Alotech all filed notices of consent.  (Docs. 4, 14, 16.)

## II.    <u>Legal Standard</u>

Federal courts are courts of limited jurisdiction.  *Home Depot USA, Inc. v. Jackson*, 587 U.S. 435, 437 (2019); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Article III, § 2, of the Constitution delineates 'the character of the controversies over which federal judicial authority may extend.'"  *Jackson*, 587 U.S. at 437 (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)).  Federal court jurisdiction is even "further limited to those subjects encompassed within a statutory grant of jurisdiction."  *Id.*  Thus, "district courts may not exercise jurisdiction absent a statutory basis."  *Exxon Mobile Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 552 (2005).  Namely, federal question or diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.  Upon a motion by the plaintiff, a removed action may be remanded to state court.   28 U.S.C. § 1447.  If the federal court lacks subject matter jurisdiction, remand is mandatory.  *Id.*

The removing party has the burden of establishing federal jurisdiction.  *Vill. of Oakwood v. State Bank and Tr. Co.*, 539 F.3d 373, 377 (6th Cir. 2008).  "[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand."  *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–550 (6th Cir. 2006)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

(quoting *Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir. 1996)).  "When there is uncertainty as to whether remand is appropriate or not, 'all doubts should be resolved in favor of remand.'" *Arrington v. Medtronic, Inc.*, 130 F.Supp.3d 1150, 1155 (W.D. Tenn. 2014) (quoting *Ethington v. Gen. Elec. Co.*, 757 F.Supp.2d 855, 860 (N.D. Ohio 2008)).

"Federal question jurisdiction exists in 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Hudak v. Elmcroft of Sagamore Hills*, 566 F.Supp.3d 771, 779 (N.D. Ohio 2021) (citing 28 U.S.C. § 1331).  "An action 'arises under' federal law if: (1) 'federal law creates the cause of action,' or (2) 'the vindication of a right under state law necessarily turns on some construction of federal law.'" *Id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986)).

The remand inquiry is "generally governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* at 780.  Under this rule, a plaintiff is the "master of her claims" and "she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (citing *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987)).  "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purposes of removal." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003)).  The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813.  And a defendant cannot create a federal question by asserting federal defenses to the claims. *See Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Loc. 704*, 25 F.3d 1308, 1313 (6th Cir. 1994).

III.    <u>**Analysis**</u>

Plaintiffs assert the well-pleaded complaint rule.  (Doc. 7 at 112.)  While Defendants do not dispute Plaintiffs' complaint presents no federal cause of action, nonetheless, Defendants argue the well-pleaded complaint rule does not apply because the Court has exclusive jurisdiction to hear the spoliation and abuse of process claims, the Court has general federal question jurisdiction over those same claims, the claims present a substantial federal question, and because the artful pleading doctrine applies.  (Doc. 19 at 165, 169, 171.)  Separately, Plaintiffs argue Defendants have not demonstrated unanimous consent for removal.  (Doc. 7 at 116.)

A.    **Exclusive Jurisdiction**

Defendants argue this Court has exclusive jurisdiction over the spoliation and abuse of process claims.  (Doc. 19 at 165.)  Defendants rely on *In re Loney* where the Supreme Court held "the power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the government in whose tribunals that proceeding is had."  134 U.S. 372, 375 (1890).  In *Loney*, defendant testified in a federal proceeding about a contested congressional election.  *Id.* at 374.  During that testimony, defendant allegedly committed perjury.  *Id.*  The State of Virginia, being where the federal court sat, brought criminal charges against defendant for perjury.  *Id.*  The Supreme Court held Virginia could not prosecute defendant because the federal court had exclusive jurisdiction to punish perjury.  *Id.* at 375.  Thus, the Supreme Court granted petitioners' habeas petition.  *Id.*

Defendants argue Plaintiffs' spoliation claim essentially seeks to punish Defendants for perjury before a federal court.  (Doc. 19 at 165.)  Thus, as in *Loney*, only a federal court can hear

the claim.  Plaintiffs argue *Loney* is inapplicable because it involved a perjury prosecution. (Doc. 24 at 213.)

Defendants' effort to extend *Loney* to expand federal jurisdiction to civil actions brought in separate forums is unpersuasive.  At bottom, these are civil causes of action, brought by individuals rather than a government entity, and seeking civil remedies rather than a criminal conviction or sanction.  Defendants presented no cases applying *Loney* in this way.  And, as discussed below, no courts addressing similar issues either rely on or even mention *Loney*.  In short, *Loney* does not apply here.  Indeed, its limited application is to federal perjury charges stemming from a federal criminal proceeding.

### B.      Federal Question Jurisdiction

Defendants argue this Court has federal question jurisdiction because federal courts possess inherent authority to supervise the conduct of litigants before it.  (Doc. 19 at 165.)  Thus, Defendants argue any spoliation or abuse of process claim must be brought in the court in which the alleged spoliation or abuse occurred.  (*Id.* at 166–67.)  Defendants primarily rely on *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) and *Kaivac, Inc. v. Stillwagon*, No. 19-cv-410, 2021 WL 184593, 2021 U.S. Dist. LEXIS 9233 (S.D. Ohio Jan. 19, 2021).

*Adkins* overruled a prior Sixth Circuit decision requiring federal courts to apply state substantive law to spoliation issues.  *Adkins*, 554 F.3d at 652.  Prior to *Adkins*, if a matter was pending before a federal court, and issues of spoliation arose, the federal court applied the state's substantive law to determine if spoliation occurred and what remedy was available.  *Id.  Adkins* overruled that rule and held spoliation is a procedural and evidentiary matter, not one of substantive law.  *Id.* ("a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters").

It is unclear whether *Adkins* applies to a state tort law claim for spoliation.  The *Kaivac* court identified this issue.  2021 WL 184593, at *11.  In *Kaivac*, plaintiff brought various claims in federal district court against a former employee who allegedly continued to access plaintiff's files after termination.  *Id.* at *1–2.  After plaintiff filed the lawsuit, defendant deleted relevant files from his smartphone.  *Id.*  Plaintiff amended its complaint to include a spoliation claim under Ohio law.  *Id.*  On summary judgment, the district court, without deciding the issue, questioned its ability to enter judgment on the claim.  *Id.* at *11.  Given *Adkins*, the court questioned whether an Ohio spoliation claim could proceed given that federal law controls spoliation motions during the legal proceedings before it.  *Id.*  The court recognized, however, district courts in both the Northern and Southern Districts of Ohio have entertained spoliation claims under Ohio law.  *Id.* at *12.  This left the claim in a legal gray area.  *Id.* (denying summary judgment without prejudice subject to further briefing).

Plaintiffs argue *Adkins* applies only to cases in which a party has brought a spoliation motion in federal court.  (Doc. 24 at 220.)  If Plaintiffs brought a spoliation motion, they agree it would be governed by federal law pursuant to *Adkins*.  (*Id.*)  However, Plaintiffs brought a claim under Ohio substantive law in a separate lawsuit, not a spoliation motion.  Plaintiffs also distinguish *Kaivac* because it involved a spoliation claim brought in the same proceeding.  (*Id.* at 216–17.)  Further, Plaintiffs argue the *Kaivac* court contemplated substantive state law might apply, as other courts in this District have done.  *See Carovac v. Lake Cnty. Bd. of Dev. Disabilities/Deepwood*, No. 19-cv-2344, 2020 WL 5423966, 2020 U.S. Dist. LEXIS 165461, at *22–23 (N.D. Ohio Sept. 9, 2020) (analyzing Ohio spoliation claim without considering federal law); *Robinson v. Target Corp.*, No. 17-cv-1566, 2019 WL 4862065, 2019 U.S. Dist. LEXIS 171126, at *6–7 (N.D. Ohio Oct. 2, 2019) (same); *Miller v. Target Corp.*, No. 13-cv-216, 2014

WL 5531654, 2014 U.S. Dist. LEXIS 155458, at *7–8 (S.D. Ohio Nov. 3, 2014) (same).  In fact, in *Cumberlander v. Patriot Prep. Acad. Inc.*, the court specifically rejected an interpretation of *Adkins* that would require a federal court to apply federal sanctions law to an Ohio common law spoliation claim.  86 F.Supp.3d 808, 828 (S.D. Ohio 2015).

Case law appears to confirm state law spoliation and abuse of process claims brought in a separate state court proceeding based on conduct during federal litigation does not present a federal question.

In *Quality Measurement Co. v. IPSOS S.A.*, the Sixth Circuit considered whether several claims were barred by *res judicata*, including spoliation claims arising under Indiana and Ohio common law.  56 F. App'x 639, 647–48 (6th Cir. 2003).  In *Quality Measurement*, plaintiff brought a trade secret claim against defendant in Indiana state court and defendant removed.  *Id.* at 642.  The court dismissed some of plaintiff's claims and plaintiff lost at trial on the remaining ones.  *Id.*  After trial, plaintiff moved for sanctions which the court denied.  *Id.*  During litigation, plaintiff alleged defendant engaged in unfair litigation tactics and spoliation.  *Id.*  While the parties litigated in Indiana federal court, plaintiff filed a separate lawsuit in the Southern District of Ohio, alleging RICO, fraud, spoliation, and other claims.  *Id.* at 643.  The new lawsuit was entirely premised on defendant's conduct in the first lawsuit.  *Id.*  The Southern District of Ohio granted defendant's motion for summary judgment in full, mostly on *res judicata* grounds.  *Id.* at 650.

On appeal, the Sixth Circuit explained "[i]n general, a party may not address the litigation-related misconduct of the opposing party in a separate action but must instead raise its complaints in the first action."  *Id.* at 647–48.  However, "[d]espite this general disclination to try litigation-related misconduct separately, a claim for spoliation of evidence is cognizable separate

cause of action." *Id.* at 648.  The issue can be reconciled, the Sixth Circuit explained, by attaching the separate cause of action in the same litigation.  *Id.*  And while "[v]irtually all jurisdictions discourage spoliation of evidence through discovery sanctions or evidentiary inferences . . . unlike most jurisdictions . . . Ohio do[es] not restrict victims to only these remedies; they allow the victim of spoliation to seek tort damages in a separate action."  *Id.*  In this way, "public policy for allowing a tort claim thus does not conflict with *res judicata* law requiring that separate claim to be brought in the same action."  *Id.* at 649.  Ultimately, the Sixth Circuit upheld the dismissal of the spoliation claim because the claim was discovered during the pendency of the prior litigation.[2]  *Id.*

Other courts faced with similar issues have found no subject matter jurisdiction.  For instance, in *North v. Smarsh, Inc.*, the court found it lacked subject matter jurisdiction over a state law spoliation claim.  160 F.Supp.3d 63, 76 (D.D.C. 2015).  Plaintiffs were securities brokers subject to a FINRA enforcement action.  *Id.* at 70.  Plaintiffs used Smarsh for its email vendor.  *Id.*  FINRA asked Smarsh to produce certain emails.  *Id.*  After it did so, plaintiffs argued the data was spoliated and brought claims in a separate suit in federal court against Smarsh.  *Id.*  The court dismissed the claim for lack of subject matter jurisdiction.  *Id.*  The court

---

[2] Ohio recognizes both first and third-party spoliation claims, allowing claims against parties to the original litigation or non-parties.  *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).  Many jurisdictions recognize only third-party claims.  *Benson v. Penske Truck Leasing Co.*, No. 03-2088, 2006 WL 840419, 2006 U.S. Dist. LEXIS 18259, at *10–11 (W.D. Tenn. Mar. 30, 2006) (collecting cases).  Jurisdictions that allow only third-party claims require parties bring spoliation claims in the same litigation, thereby preempting first-party claims.  This has the same preclusive effects as *res judicata*.  *See Stillwagon v. City of Delaware*, 175 F.Supp.3d 874, 911–12 (S.D. Ohio 2016).  Since *Smith*, the Ohio Supreme Court has limited first-party claims in virtually the same way as other jurisdictions.  *See Davis v. Wal-Mart Stores, Inc.*, 756 N.E.2d 657, 660 (Ohio 2001) (first-party claims must be brought in the same litigation if the party discovers the alleged spoliation during the pendency of that litigation).  If it is not brought at that time, the claim is waived.  *Quality Measurements*, 56 F. App'x at 649.

rejected plaintiff's argument it had jurisdiction because the underlying FINRA action involved issues of federal law (*e.g.*, the Exchange Act).  *Id.* at 79.  The court, finding no federal statute at issue, nor any substantial federal question involved, dismissed the claim.  *Id.*

In *Fouad v. Milton Hershey Sch. and School Tr.*, the court found it lacked subject matter jurisdiction over an abuse of process claim.  No. 19-cv-253, 2020 WL 5775018, 2020 U.S. Dist. LEXIS 177735, at *16 (M.D. Penn. Sept. 28, 2020).  There, plaintiff sued in state court alleging defendants conspired together to cause harm to plaintiff through various federal lawsuits.  *Id.* at *3–4.  After defendants removed, the court granted plaintiff's motion to remand and explained: "Although Fouad's abuse of process claim arises from the alleged abuse of process in several federal lawsuits, this does not confer federal question jurisdiction.  The tort of abuse of process arises under state law; the fact that the process that was allegedly abused was federal in nature does not transform the state tort into a federal claim."  *Id.* at *16.

The court in *Bernahl v. Eversheds Sutherland Ltd.* similarly found it lacked subject matter jurisdiction over an abuse of process claim.  698 F.Supp.3d 1138, 1144 (N.D. Cal. 2023).  Plaintiff filed abuse of process and related claims in state court based on defendants' issuance of subpoenas pursuant to Federal Rule of Civil Procedure 45 and 28 U.S.C. § 1782.  *Id.* at 1141.  The court rejected defendant's argument that because the case involved Federal Rule 45, it necessarily implicated federal law and federal jurisdiction.  *Id.* at 1142–43.  Instead, the court remanded the case finding no federal statute at issue nor substantial federal question.  *Id.* at 1143.

In *Am. Prods. Production Co. of Pinellas Cnty., Inc. v. Armstrong*, the court declined jurisdiction over an abuse of process claim relating to a prior (and still ongoing) federal litigation involving ERISA claims.  674 F.Supp.3d 1118, 1125 (M.D. Fla. 2023).  The court explained "[t]hat the abuse of process claim relates to an ongoing federal claim does not give the Court

jurisdiction because abuse of process is fundamentally different from a claim under ERISA." *Id.* at 1125.  Therefore, the court dismissed the abuse of process suit for lack of subject matter jurisdiction.

In *Backer v. Coop. Rabobank U.A.*, the court rejected jurisdiction over abuse of process and prima facie tort claims.  338 F.Supp.3d 222, 226 (S.D.N.Y. 2018).  In the first action, plaintiff sued defendants in federal court alleging violations of federal banking law.  *Id.*  The court dismissed the claims and denied plaintiff's motion for sanctions.  *Id.* at 226–27.  Plaintiff then filed a state court action, alleging abuse of process and prima facie tort for defendants' conduct in the first action.  *Id.* at 227.  Defendants removed the case to federal court.  *Id.*  The court concluded it did not have subject matter jurisdiction over the second filed suit.  *Id.* at 235–37.  Defendants argued plaintiff's claims necessarily raised issues of federal law because the claims alleged violations of the Federal Rules.  *Id.* at 234.  But the court explained while plaintiff's claims might suggest defendants violated Rule 11, the "current action is not brought under Rule 11, and plaintiff's claims do not require a court to determine whether defendants violated Rule 11." *Id.* at 235.  Instead of asking the court to apply federal law, the claims required the court to apply state substantive law, which differed from Rule 11 sanctions.  *Id.*

And in *Fharmacy Recs. v. Nassar*, plaintiff and defendant were engaged in litigation in federal court.  806 F.Supp.2d 1030, 1032 (E.D. Mich. 2011).  Plaintiffs filed a state court action alleging abuse of process, tortious interference, negligence, and civil conspiracy against the parties and lawyers involved in the federal lawsuit.  *Id.* at 1033.  Defendants filed an injunction in the federal court arguing plaintiffs were attempting to relitigate issues already decided by the federal court.  *Id.* at 1035.  The court denied the injunction and held:

> The state court lawsuit in the present matter does not seek to relitigate either aspect of this Court's final judgment, that the plaintiffs [] claim failed as a matter of law

or that the plaintiffs and their attorneys engaged in severe misconduct.  Instead, it seeks a determination that defense counsel acted inappropriately during the course of the federal litigation, a subject raised and decided in post judgment motions, but not in the context of the state court causes of action.

*Id.*  The court further stated:

> The Court believes that it is quite clear that in filing the state court action, the plaintiffs are attempting to revive their discredited arguments of defense attorney misconduct for which there is no record support in this Court.  It is not a novel tactic, but fortunately it is not a common one.  And the state courts have the necessary tools to deal with the situation.

*Id.* at 1038.  The court denied the injunction and allowed the state court lawsuit to proceed.  *Id.* at 1039.

Additionally, the Advisory Committee notes to the 2015 amendments to Federal Rule 37—the federal rule relating to storage of electronically stored information—explains: "The rule does not affect the validity of an independent tort claim for spoliation if state law applies in a case and authorizes the claim."  Fed. R. Civ. P. 37 Advisory Committee Notes, 2015 Amends.  The note recognized the existence of a separate and independent tort claim under state law (if it applies) and that the Federal Rules do not extinguish or effect those rights.

In this case, as in the above cases, there is no question of federal law the state court would have to decide.  Instead, a court hearing Plaintiffs' claims will apply Ohio law to determine if Defendants spoliated evidence or abused process.  The elements of a spoliation claim are: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts."  *Smith*, 615 N.E.2d at 1038.  The elements of an abuse of process claim are: "(1) that a legal proceeding has been set in motion in proper form and

with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 626 N.E.2d 115, 118 (Ohio 1994). None of these elements implicate a federal question. That is, the claims brought by Plaintiffs does not require a state court (or a federal court) to analyze federal law. Instead, all the elements and issues rise and fall on an analysis of state law.

While it may be preferable to litigate these issues in federal court, Ohio law recognizes a separate and distinct tort claim for spoliation. That an Ohio spoliation claim may involve facts stemming from a separate litigation—in this case a federal one—does not give rise to a federal claim, and in turn, federal jurisdiction.

Accordingly, the Court concludes that a state law claim involving facts occurring before a federal court does not, without more, create federal jurisdiction. At best, Defendants have presented a novel question that, when considered in light of relevant case law throughout the country, suggests a possible ambiguity. But ambiguities do not cut in their favor. It is Defendants burden to prove this Court's jurisdiction. *Vill. of Oakwood*, 539 F.3d at 377. Where there is any doubt, remand is required. *Eastman*, 438 F.3d 549–550.

### C. Substantial Federal Question Doctrine and Artful Pleading Doctrine

The Court addresses two exceptions to the well-pleaded complaint rule that Defendants contend apply to this case.

The first is the substantial federal question doctrine. (Doc. 19 at 171.) Under *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, federal courts can exercise jurisdiction even over purely state law claims if those claims raise a substantial federal question. 545 U.S. 308, 313 (2005). There are three elements to the substantial federal question doctrine: "(1) the state-law

claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (citing *Grable*, 545 U.S. at 314).

Defendants do not show a necessarily raised and disputed federal issue. As discussed above, Plaintiffs' spoliation claim and abuse of process claim does not implicate any question of federal law. *See Fouad*, 2020 WL 5775018, at *8 (rejecting substantial federal question doctrine because "it is the traditional tort principles of the existence of process, the defendant's motives, and the wrongfulness of the defendant's actions that determine whether a defendant has abused process, none of which would necessarily require analysis of the Federal Rules of Civil Procedure or any other federal law."). Moreover, while the parties dispute the merits of Plaintiffs' claims, it does not appear the parties actually dispute the application or interpretation of federal law.

Further, the federal interest is not "substantial." Courts consider four factors in making the substantial interest determination: "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (*i.e.*, not trivial); (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (*i.e.*, the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570.

Defendants fail to show any of these factors weigh in favor of finding the federal question in this case "substantial." This case does not involve a federal agency. Further, the federal question in this case is not "important." While Defendants surely believe it is, the

Supreme Court has explained "it is not enough that the federal issue be significant to the particular parties in the immediate suit," because the "substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013).  Resolution of whether Defendants in this case committed spoliation does not implicate the federal system as a whole.  Moreover, the decision on the federal question will not resolve the case because the issue is incidental to the outcome.  If the Court were to find federal law applies to the spoliation and abuse of process claims, there are other claims remaining in the case that do not turn on that question.  Lastly, a determination here will not control numerous other cases.  There is nothing novel about a spoliation claim—federal (and state) courts across the country hear these types of issues every day.

The second is the artful pleading doctrine.  (Doc. 19 at 169.)  Under the artful pleading doctrine, "plaintiffs may not 'avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.'" *Mikulski*, 501 F.3d at 560 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981)).  "But the 'artful pleading' doctrine does not apply whenever it is possible to construe a state-law theory as a federal one." *Ohio v. Brunner*, 629 F.3d 527, 532 (6th Cir. 2010).  Instead, "the artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim or perhaps . . . where federal issues necessarily must be resolved to address the state law causes of action." *Id.* (internal quotations and citations omitted).

Here, Defendants appear to argue, under *Adkins*, Plaintiffs' spoliation and abuse of process claims are really sanctions claims under federal law.  (Doc. 19 at 170.)  Defendants have not met the standard to show artful pleading.  As above, while the state law claims here may involve factual issues that arose in the federal litigation, it does not implicate the resolution of

any federal legal issues. Whether Defendants committed a sanctionable act under federal law is separate from whether Defendants committed spoliation or abuse of process under Ohio common law. And, if Defendants argue *Adkins* applies to completely preempt the claims here, they read *Adkins* to broadly. As explained above, *Adkins* requires federal courts to apply federal law to sanction motions. However, *Adkins* does not hold that any and all state law spoliation claims are preempted by federal law.

Further, artful pleading can only be asserted where the claims "actually implicate a federal cause of action" around which a plaintiff pleaded. *Mikulski*, 501 F.3d at 561. Here, the parties agree there is no federal cause of action for spoliation of evidence. (Doc. 7 at 113.) And the parties agree there is no federal cause of action for abuse of process. (Doc. 24 at 210.) Thus, there was nothing for Plaintiffs in this case to artfully plead around. *See Dillon v. Medtronic, Inc.*, 992 F.Supp.2d 751, 760–61 (E.D. Ky. 2014) ("Jurisdiction based on a strategically pled complaint is only possible when the plaintiff's claims actually implicate a federal cause of action that might have been invoked absent artful pleading."). While Defendants contend Plaintiffs should have brought their complaints as a spoliation motion, that is not a legal claim.

The artful pleading doctrine does not apply to this case. Instead, Defendants attempt to recast Plaintiffs' state claims as federal ones. But Defendants cannot recharacterize Plaintiffs' complaint for purposes of removal.

### D.    Unanimous Consent

Plaintiffs argue remand is necessary because Defendants have not shown unanimous consent for removal. (Doc. 7 at 116.) While the Court has already determined remand is required for lack of jurisdiction, the Court nonetheless considers Plaintiffs' unanimous consent arguments.

There are twelve named defendants in this case.  Plaintiffs argue only eight of them have affirmatively consented to removal by either opposing remand or filing a notice of consent. Specifically, Defendants Grassi, Peltz, RSP Consulting, and Hawker have not affirmatively opposed remand nor filed a notice of consent.  Without their consent, Plaintiffs argue remand is required.

"The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal."  *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 201 (6th Cir. 2004) (quoting *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999)).  Here, Peltz, RSP Consulting, and Hawker had not been served at the time of removal (nor is there any indication they have been served to date). While Defendant Grassi was served at the time of removal, Defendants SGR and Lockwood stated in their notice of removal they had "obtained consent from all served parties to remove this action."  (Doc. 1 at 2.)  Under *Harper*, that statement is sufficient.  *Harper*, 392 F.3d at 201 (holding that representation from counsel for one defendant that another defendant consented to removal sufficient to satisfy unanimity); *City of Cleveland v. Deutsche Bank Tr. Co.*, 571 F.Supp.2d 807, 815 (N.D. Ohio 2008) (defendant "could have accomplished a valid removal merely by representing to the Court that its co-defendants consented to the removal").  Accordingly, all served defendants in this matter have properly consented to removal.

**IV.**     <u>**Conclusion**</u>

For the reasons stated above, Plaintiffs' motion to remand is GRANTED.  This case is

REMANDED to the Cuyahoga County Court of Common Pleas.

**IT IS SO ORDERED.**


Date:   November 14, 2024                                      _____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE